# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **PURCELL TIRE & RUBBER COMPANY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:22-CV-433 PLC |
| ) | |
| **PADFIELD, INC. d/b/a QUALITY TIRE** ) | |
| **COMPANY, et al.,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Padfield, Inc. d/b/a Quality Tire Company (Quality Tire); Alden Padfield, as Trustee of the G. Alden Padfield Family Living Trust; Scott Hanson; and Greg G. Robinson's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 27] Plaintiff Purcell Time & Rubber Company opposes the motion. [ECF No. 29] For the reasons stated below, the Court denies the motion in part and grants the motion in part.

### I.  Factual and Procedural Background

Defendants Padfield, Hanson, and Robinson were the owners of Quality Tire. [ECF No. 4 at ¶ 9] Quality Tire was engaged in the sale of commercial tires and the manufacturing, warehousing, servicing, and retreading of vehicle tires through the operation of auto and truck centers and retread plants. [ECF No. 28-1 at 1]. Plaintiff is engaged in the business of the sale of commercial tires, retread operations, and related services. [ECF No. 28-1 at 1].

On December 4, 2020, Plaintiff and Defendants entered into an Asset Purchase Agreement ("APA") whereby Plaintiff purchased certain assets from Quality Tire. [ECF No. 4 at ¶ 8] Plaintiff agreed to pay $9,000,000 in consideration for the "Purchased Assets and other rights" plus

additional sums representing the value of Quality Tire's inventory, accounts receivable, and deposits as of the date of closing, identified as on or before December 31, 2020. [ECF No. 28-1, Sections 4.1, 4.4(a)]

In the APA, Defendants agreed to "sell, convey, transfer, assign and deliver" to Plaintiff "all of [Defendants'] right, title and interest in, to and under" the "Purchased Assets" on the closing date. [ECF No. 28-1, Section 2.1] The "Purchased Assets" were those "owned and/or leased by [Quality Tire], and used solely and exclusively in the conduct of the Business (relating solely to the Asset Locations), other than the Excluded Assets" listed in the APA.[1] [ECF No. 28-1, Section 2.1] The Purchased Assets included, but were not limited to: certain accounts receivable, inventory, contracts, leases, "Tangible Personal Property[,]" and "General Intangibles[.]" [ECF No. 28-1, Section 2.1] "Tangible Personal Property" is defined as "[a]ll furniture, fixtures, machinery and equipment, racks, tools, vehicles, forklifts, supplies, computers, laptops, IT hardware, peripherals, software programs, and other tangible personal property of the Business relating solely to the Asset Locations, including any and all equipment that is the subject of lease financing from Michelin[.]" [ECF No. 28-1, Section 2.1(e)]  "General Intangibles" is defined as "[a]ll the following pertaining to the Business: [Quality Tire's] business records and files…; customer lists, all data and know-how necessary to conduct the Business; all information pertaining to current and prospective service contracts; promotional materials; product specifications, drawings, and prototypes; software; and intangible items, including the goodwill of the Business as a going concern…." [ECF No. 28-1, Section 2.1(g)]

Article 5 of the APA contains Defendants' "Representations and Warranties" as of the date of execution of the APA and the date of closing. [ECF No. 28-1, Article 5]  Section 5.5 provides

---

[1] The "Asset Locations" are 10 auto and truck centers and retread plants enumerated in the APA that were operated by Quality Tire. [ECF No. 28-1, at pg. 1 & Schedule 1].

Defendants have good title or a valid leasehold in all of the Purchased Assets and that the "Purchased Assets (a) constitute all of the assets, tangible and intangible, of any nature whatsoever, necessary to operate the Business in the manner presently operated by [Quality Tire]; [and] (b) include all of the operating assets of the Business…" [ECF No. 28-1, Section 5.5] Defendants also warrantied that, to their knowledge, Quality Tire was "in compliance in all material respects" with all laws applicable to the conduct of the business, including all appliable laws and regulations related to environmental protection and "the use, storage, recycling, transportation, handling, disposal and labeling of pollutants, contaminants, wastes and chemicals or other hazardous substances…." [ECF No. 28-1, Sections 5.6 and 5.9] In Section 5.15, titled "Full Disclosure[,]" Defendants represented they:

> are not aware of any fact, condition or circumstances that may materially and adversely affect the assets, liabilities, business, prospects, condition or results of operations of Seller or the Business that has not been previously disclosed to the Buyer in writing. Furthermore, no representation or warranty or other statement made by Seller in this Agreement, the Disclosure Schedules, or otherwise in connection with the transactions contemplated hereby contains any untrue statement of material fact or omits to state a material fact necessary to make such statements not misleading.[2] [ECF No. 28-1 at 18 & 19]

Under Section 7.1 of the APA, Quality Tire agreed to conduct the business and its operations in the ordinary course of business and to use commercially reasonable efforts to maintain and preserve its current business organization, operations, and goodwill and relationships of its employees and customers from the date of execution until the date of closing. [ECF No. 28-

---

[2] Furthermore, Section 4.7 provides Plaintiff was not obligated to perform under the APA unless certain conditions were fulfilled, including that "[n]o Material Adverse Effect shall have occurred since" the date the APA was signed. [ECF No. 28-1, Section 4.7]  The APA defines a "Material Adverse Effect" as "any change, event or occurrence that taken together with all other changes, events or occurrences is or would reasonably be likely to be materially adverse with a detrimental impact equal to at least $10,000 in the aggregate, to (a) the properties, assets, liabilities, financial condition or results of operations of the Business taken as a whole; (b) the Purchased Assets taken as a whole, or (c) the ability of [Quality Tire] to consummate the transactions contemplated by this Agreement." [ECF No. 28-1, Section 1.1]

3

1, Section 7.1]  During this period, Quality Tire also agreed not to: (1) "take any action intended to or the result of which would make any representation and warranty of the Seller hereunder inaccurate in any material respect at, or as of any time prior to, the Closing Date" and (2) increase the compensation of employees "except for an increase in base salary for non-officer employees not exceeding 3% per employee and not material to [Quality Tire] in the aggregate, that are made in the ordinary course of business consistent with past practice[.]"  [ECF No. 28-1, Section 7.1]

Plaintiff performed its obligations and paid Quality Tire the consideration set forth in the APA. Plaintiff alleges it discovered after closing acts, omissions, and representations by Defendants that violated Defendants' warranties and covenants under the APA. Specifically, Plaintiff alleges: (1) the customer list Quality Tire provided Plaintiff prior to execution of the APA, a "General Intangible" under the contract, included the names of several businesses that were not customers at the date of closing;  (2) Defendants failed to remove "scrap" from the Asset Locations prior to closing; (3) Defendants failed to transfer ownership a Servo Drive Buffer Assembly (a "buffer") to Plaintiff as "Tangible Personal Property" under the APA; (4) "a significant amount of the equipment" included in the sale as "Tangible Personal Property" was not in operating condition at the time of closing, and (5) Defendants gave "several employees…payroll increases and/or bonuses prior to Closing" which were not previously disclosed and were not made in the ordinary course of business.[3]  Plaintiff filed this action against Defendants alleging breach of contract (Count I), fraudulent misrepresentation (Count II), negligent misrepresentation (Count III), and unjust enrichment (Count IV). [ECF No. 4]

---

[3] Plaintiff collectively refers to these acts and omissions as "False Material Representations and Breaches" throughout the petition. [ECF No. 4, ¶13]

4

Defendants move to dismiss all of Plaintiff's claims. [ECF Nos. 27 & 28] Defendants maintain the petition fails to state a claim for breach of contract because Plaintiff's allegations do not support a finding that Defendants' alleged acts or omissions violated any provision of the APA. Defendants also argue Plaintiff cannot maintain a claim for unjust enrichment, an equitable remedy based on the concept of a quasi-contract, because Plaintiff alleges the APA is an enforceable contract and Plaintiff cannot recover under both an express contract and unjust enrichment. Additionally, Defendants contend (1) the economic loss doctrine bars Plaintiff's claims for fraudulent and negligent misrepresentation, (2) Plaintiff failed to plead fraud with particularity, and (3) Plaintiff waived its claim for negligent misrepresentation in the APA.

Plaintiff opposes Defendants' motion to dismiss arguing it sufficiently alleged a claim for Defendants' multiple breaches of the APA. [ECF No. 29] Plaintiff argues it properly pleaded the claims for unjust enrichment, fraudulent misrepresentation, and negligent misrepresentation in the alternative to its breach of contract claim and that neither the economic loss doctrine nor the terms of the APA prevent these alternative theories of recovery. Plaintiff also asserts it pleaded its fraudulent misrepresentation claim with sufficient particularity. Finally, Plaintiff requests the Court grant it leave to amend its petition if the Court deems Plaintiff has not pleaded sufficient facts to state a claim for relief on any of the counts.

II. **Legal Standard**

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(b). The federal rules do not require detailed statements of fact in the complaint, instead requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2); Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512–13 (2002) (the federal court is a notice pleading system). "To survive a motion to dismiss,

5

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2006)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When considering a motion to dismiss for failure to state a claim, a court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Cole v. Homier Distrib. Co., Inc., 599 F.3d 856, 861 (8th Cir. 2010) (quoting Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005)).

### III. Discussion

A. Breach of Contract

Defendants move to dismiss Plaintiff's breach of contract claim contending the Plaintiff's allegations do not support a finding that Defendants' alleged acts or omissions violated the provisions of the APA. For a breach of contract claim to survive a Rule 12(b)(6) motion, Plaintiff must allege facts demonstrating: (1) the existence and terms of a contract, (2) Plaintiff performed pursuant to the contract, (3) Defendants breached the contract, and (4) Plaintiff suffered damages resulting from the breach. Fuller v. Partee, 540 S.W. 3d 864, 871 (Mo. Ct. App. 2018). "The 'cardinal rule' of contract interpretation is to 'ascertain the intention of the parties and to give effect to that intention.'" Affordable Communities of Missouri v. Federal Nat. Mortg. Ass'n, 714 F.3d 1069, 1075 (8th Cir. 2013) (quoting J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club, 491 S.W.2d 261, 264 (Mo. 1973)). The contract is construed as a whole, and the Court favors "a construction that gives a reasonable meaning to each phrase and clause and harmonizes all provisions." Id. (quoting State ex rel. Riverside Pipeline Co., L.P. v. Pub. Serv. Comm'n, 215 S.W.3d 76, 84 (Mo. 2007)).

Plaintiff alleged in the petition, and Defendants do not dispute in their motion, that the parties entered into a written contract, that Plaintiff performed pursuant to the contract, and that Plaintiff was damaged by Defendants' alleged breach of the contract. [ECF Nos. 4 & 27] The only dispute at this juncture is the third element, whether Defendants breached the contract.

Plaintiff alleged it made the following discoveries after closing: (1) the customer list Quality Tire provided Plaintiff prior to execution of the APA, which was a "General Intangible" purchased by Plaintiff under the APA, included the names of several businesses that were not customers at the date of closing; (2) Defendant failed to transfer ownership of all "Tangible Personal Property" it was obligated to do so under the APA, namely a buffer; (3) "a significant amount of the equipment" included in the sale as "Tangible Personal Property" was not in operating condition at the time of closing, (4) Defendants failed to remove "scrap" from the stores prior to closing, and (5) Defendants gave "several employees…payroll increases and/or bonuses prior to Closing" which were not previously disclosed and were not made in the ordinary course of business.

Under the breach of contract claim, Plaintiff alleged Defendants' false representations regarding the customer list and failure to transfer all of the "Tangible Personal Property" to Plaintiff were material breaches of Defendants' warranties under Article 5 of the APA and their obligations to convey all of the "Purchased Assets" to Plaintiff at closing. [ECF No. 28-1 ¶¶ 24, 25, 26] Plaintiff alleged Defendants' failure to transfer the "Tangible Personal Property" in operating condition constituted a material breach of Defendants' warranties under the APA. [ECF No. 28-1 ¶ 25] Plaintiff also alleged Defendants' failure to remove all of the "scrap" products from its stores before closing was a breach of Defendants' obligation under the APA Section 3.2 to "retain, satisfy, and timely discharge, all liabilities and obligations associated with the Business"

7

prior to closing and violated Defendants' representation in Sections 5.6 and 5.9 that Quality Tire was, to their knowledge, "in compliance in all material respects" with all laws applicable to the conduct of the business, including with federal, state, and local environmental laws and regulations. [ECF No. 4, ¶27] Finally, Plaintiff alleged that the previously undisclosed payroll increases and bonuses Defendants made to employees of the business before closing violated the terms of the APA because they were not made in the ordinary course of business and constituted retained liabilities that Defendants failed to satisfy. [ECF No. 4, ¶28] Plaintiff alleged it was damaged because it "relied on representations and warranties made in the APA, and on the expected performance of the covenants of Quality Tire as reflected in the APA, as an inducement to its calculations of the Purchase Price it would pay and to enter into the APA transaction with the Defendants." [ECF No. 4, ¶ 14]

Defendants move to dismiss Plaintiff's breach of contract claims, asserting that Plaintiff fails to allege: (1) Defendants promised Plaintiff that the customers disclosed on the customer list prior to execution of the APA would be customers on the date of closing, (2) the purported inoperable property was sold under the APA and Defendants never agreed or represented that all of the "Tangible Personal Property" transferred under the APA would be in operating condition, and (3) that the buffer is an item defined as "Tangible Personal Property" under the APA. In addition, Defendants assert that: (1) no provision in the APA obligated Defendants to remove scrap material and Plaintiff does not allege that Defendants were not in compliance with applicable federal, state, or local environmental laws as it relates to the scrap materials; and (2) Plaintiff fails to allege the bonus and salary increases were not in compliance with the provisions of the APA, specifically that they were greater than 3% or were inconsistent with past practices. [ECF Nos. 27 & 28]

8

While Defendants devote a considerable portion of their memorandum attempting to undermine the sufficiency of Plaintiff's allegations, "the Court is not persuaded that pleading a simple breach of contract claim has become a rigorous undertaking or an exact science." Compass Bank v. Eager Road Associates, LLC, 922 F. Supp. 2d 818, 823 (E.D. Mo. November 19, 2014). Contrary to Defendants' assertions, Plaintiff sufficiently alleged Defendants materially breached numerous provisions of the APA to survive a motion to dismiss. This includes alleged breaches of Defendants': (1) representations and warranties about the condition of the purchased assets and the business, (2) warranties and covenants to convey all of the purchased assets to Plaintiff at closing, (3) responsibility to satisfy and discharge their liabilities and obligations associated with the business prior to the closing date, (4) representation that they were in material compliance with the law, including federal, state, and local environmental laws and regulations, and (4) covenant to conduct the business in the ordinary course of business prior to the closing date. Accordingly, the Court denies Defendants' motion to dismiss Count I of Plaintiff's petition.

B.  Unjust Enrichment

In Count IV of the petition, Plaintiff brings a claim for unjust enrichment. Plaintiff alleges Defendants' "False Material Representations and Breaches" inflated the economic value of, and induced Plaintiff to pay a higher price for, the purchased assets which "enriched Defendants at the direct harm" to Plaintiff. Plaintiff alleged it would be unjust to allow Defendants to retain a benefit they obtained from their "False Material Representations and Breaches made to induce [Plaintiff] to enter into the APA."

Defendants contend Plaintiff's petition fails to state a claim for unjust enrichment because it alleges the APA is an enforceable contract and Plaintiff cannot recover under both an express contract and unjust enrichment. Plaintiff opposes Defendants' motion asserting Fed R. Civ. P. 8(d)

allows a party to present alternative theories of recovery, regardless of consistency, and that it properly pleaded its claim for unjust enrichment in the alternative to its breach of contact claim.

"Missouri law does not allow *recovery* under both an express contract and equitable theories of relief." Moore v. Compass Group USA, Inc., 4:18-CV-1962 RLW, 2019 WL 4723077, *9 (E.D. Mo. September 26, 2019). However, a plaintiff may plead alternative claims for relief in the complaint, regardless of their consistency. Id., Fed. R. Civ. P. 8(d) ("[a] party may state as many separate claims or defenses as it has, regardless of consistency.") Courts in this district have allowed plaintiffs to plead alternative theories for unjust enrichment to a claim for breach of an express contract. Id. at 10 (listing cases).

Although Plaintiff's petition does not explicitly state that its unjust enrichment claim is pleaded in the alternative to its breach of contract claim, "[t]he liberal policy reflect in Rule 8(d)(2) mandates that courts not construe a pleading 'as an admission against another alternative or inconsistent pleading in the same case.'" Id. (quoting Chem Gro of Houghton, Inc. v. Lewis Cty. Rural Elec. Co-op. Ass'n., 2:11-CV-93 JCH, 2012 WL 1025001, * 3) (E.D. Mo. Mar. 26, 2012) (internal quotations and citation omitted). Although Plaintiff, ultimately, may not *recover* under both theories, the Court permits Plaintiff to plead alternative claims for breach of contract and unjust enrichment. Accordingly, the Court denies Defendants' motion to dismiss Count IV of Plaintiff's petition.

    C.  Fraudulent and Negligent Misrepresentation

In support of its fraudulent misrepresentation claim (Count II), Plaintiff alleges Defendants knowingly "made multiple False Material Representations and Breaches regarding the scope of the Purchased Assets, the quality or condition of the Purchased Assets, and the actions of Defendants constituting Retained Liabilities that were not in fact retained by Quality Tire but were

10

paid for or undertaken" by Plaintiff after closing. [ECF No. 4, ¶¶ 34, 35] Plaintiff alleges it relied upon the truth of the "False Material Representations and Breaches Defendants made to [Plaintiff] throughout the negotiations surrounding the APA and in the APA itself, and in agreeing to a final Purchase Price for the Purchased Assets." [ECF No. 4, ¶ 38] Plaintiff asserts "Defendants' False Material Representations and Breaches proximately caused injury" to Plaintiff as they "induced [Plaintiff] to pay significantly more for the Purchased Assets than it would have if it had full knowledge of the false material information and consequences of the breaches of covenants." [ECF No. 4, ¶ 40]

Under its negligent misrepresentation claim (Count III) Plaintiff alleges "[t]o the extent any of the False Material Representations and Breaches were not fraudulently provided by Defendants with the specific purpose of inducing Plaintiff to pay more for the Purchased Assets than it otherwise would have paid, Defendants failed to exercise reasonable care to ensure the accuracy of the false material information." [ECF No. 4, ¶ 43] Plaintiff claims it justifiably relied on the information Defendants provided before and at closing related to the business and Plaintiff suffered a pecuniary loss by paying "more than it otherwise would have for the Purchased Assets and in fact received assets of a significantly lower value than was represented and to be conveyed by Defendants." [ECF No. 4, ¶¶ 44-45] Plaintiff asserts that "[b]y providing the False Material Information, Defendants induced [Plaintiff] to pay [Defendants] significantly more than [Plaintiff] otherwise would had [Plaintiff] known the truth about the value of the Purchased Assets and actions Defendants would take in contravention to the APA." [ECF No. 4, ¶ 46] The "False Material Representations and Breaches" cited in support of Plaintiff's fraudulent and negligent

11

misrepresentation claims are the same acts, omissions, and representations that support Plaintiff's breach of contract claim.[4] [ECF No. 4, ¶13]

Defendants argue that the economic loss doctrine bars recovery in tort for economic losses that are contractual in nature. Defendants also contend that Plaintiff failed to plead fraud with particularity as required by Fed. R. Civ. P. 9(b) and waived its negligent misrepresentation claim in the APA. Plaintiff counters that its fraudulent and negligent misrepresentation claims are not barred by either the economic loss doctrine or the terms of the APA because they are alternative theories of recovery to its breach of contract and unjust enrichment claims. Plaintiff further argues that "the application of the economic loss doctrine at the motion to dismiss stage is premature in the face of outstanding questions of Defendants' obligations under the APA."

"Missouri prohibits a cause of action in tort where the losses are purely economic. '[R]ecovery in tort is limited to cases in which there has been "personal injury, or property damage either to property other than the property sold, or to the property sold when it [i]s rendered useless by some violent occurrence[.]"'" OS33 v. CenturyLink Communications, L.L.C., 4:17-CV-2603 CAS, 350 F.Supp.3d 807, 815 (E.D. Mo. Nov. 20, 2018) (quoting Rockport Pharmacy, Inc. v. Digital Simplistics, Inc., 53 F.3d 195, 198 (8th Cir. 1995) (citations omitted)). "The economic loss doctrine bars 'recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty.'" Dubinsky v. Mermart, LLC, 595 F.3d 812, 819 (8th Cir. 2010) (quoting

---

[4] In paragraph 13 of the petition, Plaintiff alleged: "Following the Closing, [Plaintiff] learned that several material representations, warranties and promises [Defendants] made to [Plaintiff] were breached and were false. These false material representations and breaches of covenants include, but are not limited to, the following representations (collectively, "False Material Representations and Breaches"):…." Plaintiff then sets forth Defendants alleged (1) misrepresentation of Quality Tire's customer list, (2) failure to dispose of scrap materials, (3) failure to transfer all Tangible Personal Property, (4) transfer of Tangible Personal Property with material defects, and (5) increase of compensation for employees. [ECF No. 4, ¶13]

Zoltek Corp. v. Structural Polymer Group, Ltd., 2008 WL 4921611, at *3 (E.D. Mo. Nov. 13, 2008), aff'd on other grounds, 592 F.3d 893 (8th Cir. 2010)).

The economic loss doctrine can act as a bar to both fraudulent and negligent misrepresentation claims. Although the Missouri Supreme Court has not yet addressed the issue, the Eighth Circuit has predicted the Supreme Court would hold that the economic loss doctrine bars negligent misrepresentation claims for economic losses that are contractual in nature. Dannix Painting, LLC v. Sherwin-Williams Co., 732 F.3d 902, 905-10 (8th Cir. 2013). While"[a] fraud claim independent of the contract is actionable, [] it must be based upon a misrepresentation that was outside of or collateral to the contract, such as many claims of fraudulent inducement." AKA Distrib. Co. v. Whirlpool Corp., 137 F.3d 1083, 1086 (8th Cir. 1998) (cited cases omitted) (applying Minnesota law); Dubinsky, 595 F.3d at 820 (quoting O'Neal v. Stifel, Nicolaus & Co., Inc., 996 S.W.2d 700, 702 (Mo. Ct. App. 1999) ) ("A fraud claim is permitted only if it arises from acts that are separate and distinct from the contract.") Two critical factors in examining whether a fraud claim is independent of a contract claim under the economic loss doctrine are (1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract, and (2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud. Compass Bank v. Eager Road Associates, LLC, 4:12-CV-1059, 922 F.Supp.2d 818, 827 (E.D. Mo. Feb. 8, 2013).

In support of its fraudulent and negligent misrepresentation claims, Plaintiff alleges Defendants made multiple "False Material Representations and  Breaches" with respect to the scope, quality, or condition of the assets purchased under the APA and violated their obligation to satisfy their retained liabilities under the APA.  The "false material representations and breach[es] of covenants" supporting Plaintiff's misrepresentation claims are identical to those supporting its

13

breach of contract claim. Furthermore, Plaintiff's alleged damages are the result of Defendants having induced Plaintiff to pay more for the purchased assets in the parties' contract than it would "have if it had full knowledge of the false material information and consequences of the breaches of covenants."

Here, Plaintiff's fraudulent and negligent misrepresentation claims arise solely out of Defendants' alleged breach of the covenants and warranties of the APA. Because Plaintiff's misrepresentation claims are not independent of the parties' contract, Plaintiff's fraudulent and negligent misrepresentation claims are barred by the economic loss doctrine. In light of the Court's finding on this issue, it need not address Defendants' arguments that the Plaintiff failed to plead fraud with particularity or that Plaintiff waived its negligent misrepresentation claim in the APA. Based on the foregoing, the Court grants Defendants' motion to dismiss Counts II and III of Plaintiff's petition.

D. Plaintiff's Request to Amend its Petition

At the conclusion of its response to Defendants' motion to dismiss, Plaintiff included a request for leave to amend its petition if the Court deemed "Plaintiff has not pled sufficient facts to state a claim for relief on any of the counts" in the petition. [ECF No. 29, pg. 14]. While leave to amend is ordinarily freely granted under Federal Rule of Civil Procedure 15, Plaintiff has not filed a motion for leave to amend or submitted a proposed amended complaint. See Clayton v. White Hall School Dist., 778 F.2d 457, 460 (8th Cir. 1985). Accordingly, Plaintiff's request for leave to amend is denied.

IV. **Conclusion**

For the above reasons, the Court finds Plaintiff adequately alleged its breach of contract claim and properly pleaded its unjust enrichment claim as an alternative cause of action to its

14

breach of contract claim. However, because Plaintiff's fraudulent and negligent misrepresentation claims are not independent of its contract claim, they are barred by the economic loss doctrine.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss [ECF No. 27] Plaintiff's petition is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss with prejudice Counts I and IV is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss with prejudice Counts II and III is **GRANTED**.

**IT IS FINALLY ORDERED** that Plaintiff's request for leave to amend its petition is **DENIED** at this time.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of July, 2022